321 So.2d 10 (1975)
Rosalie SPAIN and Preston Broussard, Plaintiffs-Appellees,
v.
TRAVELERS INDEMNITY COMPANY and Interstate Fire and Casualty Company, Defendants-Appellants.
No. 4989.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1975.
Rehearing Denied November 13, 1975.
Writ Granted December 19, 1975.
*11 Montgomery, Barnett, Brown & Read by Wood Brown, III, New Orleans, and Davidson, Meaux, Onebane & Donohoe by Robert Mahony, Lafayette, for defendants-appellants.
Roger C. Edwards, Abbeville, for plaintiffs-appellees.
Before FRUGE, HOOD and WATSON, JJ.
FRUGE, Judge.
Rosalie Spain (Mrs. Preston Broussard) and Preston Broussard have sued for damages for personal injuries sustained by Mrs. Broussard when an automobile in which she was riding as a guest passenger collided with another vehicle. The defendants are Travelers Indemnity Company and Interstate Fire and Casualty Company, the primary and excess liability insurers, respectively, of the driver of the automobile in which Mrs. Broussard was riding. The trial court rendered judgment for plaintiffs, and defendants have appealed. We affirm.
The accident occurred about 3:30 P.M. on March 11, 1971, near the intersection of Johnston Street and South College Road, in Lafayette. Mrs. Broussard was riding as a passenger in the right front seat of an automobile which was owned and being driven by Mr. J. E. Kibbe, an attorney in Abbeville. While Mr. Kibbe was driving his automobile south on Johnston Street, the front of his car collided with the rear of another vehicle in his lane of traffic. Mrs. Broussard allegedly sustained injuries as a result of that collision. All parties agree that Mr. Kibbe was negligent in the operation of his automobile and that his negligence caused the accident.
Mrs. Broussard was employed by and was working as a legal secretary for Mr. Kibbe at the time the accident occurred. One of the duties of her employment was to prepare estate tax returns, when such returns were necessary, in matters which were being handled by her employer. She had worked for Mr. Kibbe for several years, and she customarily worked from 8:30 A.M. to 4:00 or 4:30 P.M. every day.
On March 11, 1971, Mrs. Broussard was engaged in preparing a Federal Estate Tax Return involving some land in Georgia, and she and Mr. Kibbe felt that it was advisable for them to discuss the matter with a representative of the Internal Revenue Service in Lafayette. Mr. Kibbe drove from Abbeville to Lafayette after lunch on the date in question to talk with Mr. Perry Willis, an agent of the Internal Revenue Service about the estate tax return.
After completing their conference with Mr. Willis relative to the tax matter, Mrs. Broussard and Mr. Kibbe visited socially for about a half hour with one of Mr. Kibbe's personal friends who had an office *12 in the same building, and they then returned to Mr. Kibbe's car and started the return trip to Abbeville. After traveling a few blocks, Mr. Kibbe stopped at a bakery to buy some pastries, and they then resumed the trip to Abbeville, with Mr. Kibbe driving and Mrs. Broussard sitting in the right front seat of the car. They were traveling south on Johnston Street, which is the main thoroughfare from Lafayette to Abbeville, when the accident occurred. Mr. Kibbe reached for one of the pastry products he had purchased, and as he did so the front of the car struck the rear of the car ahead of him.
At the time of the accident there were in effect two automobile liability insurance policies which had been issued to Mr. Kibbe covering the automobile he was driving. One was issued by Travelers, and it provided for a limit of liability of $5,000 for bodily injury sustained by one person. The other was issued by Interstate, and it provided only excess insurance coverage up to a maximum limit of $95,000 for bodily injury for each person.
Plaintiffs instituted suit for damages against both of these insurers, and the defendants resisted primarily on the ground that each policy specifically excluded coverage under the circumstances presented here.
Part I of the policy issued by Travelers, relating to bodily and property damage liability, contains the following exclusionary clauses:
"This policy does not apply under Part I: . . .
"(e) to bodily injury to any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured; . . . ."
Defendant Interstate issued only an excess liability policy to Mr. Kibbe covering the automobile which was involved in the accident. Part I of that policy, under the heading "Excess Liability Indemnity," stipulated that "The provisions of the immediate underlying policy are incorporated as a part of this policy . . . ." The exclusions contained in the Travelers policy thus apply to the policy by Interstate.
The trial judge found that Mrs. Broussard was not in the "domestic employment" of Mr. Kibbe, but that she was engaged in "other employment by the insured," as that term is used in Exclusion (e)(2) of the Travelers policy. He concluded, however, that she was not excluded from coverage under the policies because (1) benefits were not payable to her under the workmen's compensation law, and (2) her injuries did not arise out of the course of her employment.
In holding that injuries arising out of "other employment" are not excluded from coverage unless benefits are payable to the injured employee under the workmen's compensation law, the trial judge said:
". . . I read the exclusion to mean that domestic employees are excluded if `benefits therefor are in whole or in part either payable or required to be provided under any Workmen's Compensation law' or benefits payable or provided under Workmen's Compensation law for injury in the course and scope of other employment by the insured. In other words, it excludes domestic employees where Workmen's Compensation is paid or other employment where Workmen's Compensation is paid . . . ."[1]
The defendants argue on appeal that the trial judge was in error in holding that the exclusion is not applicable unless benefits are payable or provided under the workmen's compensation law for the injuries sustained by the employee. Alternatively, *13 they argue that under the facts presented Mrs. Broussard is entitled to workmen's compensation benefits, and that, therefore, the exclusion applies under the trial judge's interpretation of the exclusion.
After a careful reading of the record in this case and review of the applicable law, we find that the exclusion in question is ambiguous. Under our jurisprudence, therefore, it must be construed against the insurers, and we find coverage for the injuries sustained by Mrs. Broussard. A discussion of whether Mrs. Broussard was acting within the course and scope of her employment is unnecessary in view of our conclusion as to the ambiguity of the exclusionary clause contained in the Travelers policy.
A reading of the exclusionary provisions of the policy issued by Travelers on which the defendants rely shows the ambiguity which generated this litigation. It is unclear whether the language in the exclusion with respect to workmen's compensation applies to domestic employees alone or to all employees. Nor does it make clear whether the employment which activates the exclusionary clause must involve the principal occupation of the insured, or simply any situation where an employment relationship is created between the insured and the injured party.
It is the duty of the insurer to express clearly limitations of its obligation. Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958). Any doubt concerning the limitations on and exclusions from coverage under an insurance policy must be construed against the insurer and in favor of the insured. Kendrick v. Mason, supra; Bubrig v. Phoenix of Hartford Insurance Company, 306 So.2d 60 (La.App. 4th Cir. 1974); Wilks v. Allstate Insurance Company, 195 So.2d 390 (La.App. 3rd Cir. 1967). Finding ambiguity in the exclusionary clause sought to be applied by the insurance companies in this case, we hold that the exclusionary clause does not apply under the facts presented herein. We find that the insurance policies issued by the defendants, Travelers and Interstate, provide coverage for the injuries sustained by Mrs. Broussard.
The defendants argue on appeal that the trial judge abused his discretion in awarding plaintiffs $100,000 for the damages they sustained as a result of the accident involved herein. Mrs. Broussard stated that her head struck the windshield during the collision. She had to undergo surgery which involved a fusion of two discs of the vertebrae and had to wear a back brace for approximately six months following the accident. In addition, she complained of pain in her right leg.
Dr. Hugh Larriviere, an orthopedic surgeon, testified at the trial and verified Mrs. Broussard's complaints of pain in her right leg. He diagnosed the problem as sondylolisthesis. A laminectomy was performed which required that Mrs. Broussard remain under sedation and narcotics for several months. The doctor's testimony indicated a 20% disability as a result of the accident.
Dr. John D. Jackson testified by way of deposition. He indicated that he first saw Mrs. Broussard in connection with the accident on April 14, 1971, at which time she related the occurrence of the accident to him. Dr. Jackson indicated that he had seen Mrs. Broussard in August of 1967, at which time she had a ruptured C-5-6 disc. At that time he had performed an anterior interbody fusion at the C-5-6 disc space. He next saw her on January 21, 1971, at which time he felt that the left Achilles reflex was decreased, in addition to a decreased sensation over the lateral aspect of the left thigh, leg, and lateral foot. She was admitted to Ochsner Clinic where a lumbar myelogram was performed, and spondylolisthesis was confirmed.
The next time Dr. Jackson saw Mrs. Broussard was on May 17, 1972, when she was complaining of back pain in the lower *14 extremity. She complained that she was unable to walk on her right heel, and Dr. Jackson performed a neurological examination which included an X-ray examination. His examination indicated moderate limitation of movement of the lumbar spine in all directions. Dr. Jackson's answer was in the affirmative when he was asked whether or not an accident of this sort would aggravate a condition of spondylolisthesis. He further indicated that her complaints were consistent with this sort of injury. Under cross-examination Dr. Jackson indicated that she had a surgical problem in 1967, which he diagnosed as being a degenerative disc disease at C-5-6. This had been removed and fused, and he indicated that this area was not involved in the accident.
Dr. Irvin Cahen, an orthopedist, also testified by way of deposition. He was requested to see Mrs. Broussard in order to determine whether the treatment indicated by Dr. Jackson was in accordance with his opinion. He indicated that she was suffering from a spondylolisthesis and, perhaps, an intervention of a disc space. According to the testimony of Dr. Cahen, Dr. Jackson was contemplating an operation and wanted an opinion as to orthopedic background before nerve surgery was performed. He indicated that he was later told by Dr. Jackson that he (Dr. Jackson) had decided on performing the nerve surgery, and he went ahead with this procedure. Dr. Cahen again saw the plaintiff in May of 1973 after the surgery had been performed. He said that she complained of some numbness in her right leg and foot. He saw her again in July of 1973, at which time he noticed a marked improvement in her general condition. When he next saw Mrs. Broussard, in May of 1974, she was complaining of a backache and numbness in her right leg. He made a clinical examination of Mrs. Broussard, and noted that there was a spasm in the lower lumbar region. He also noted a right curvature or listing of the vertebral column. His examination of X-rays revealed no disc involvement. However, he did state that upon an examination of the myelogram X-rays, he noticed a flattening of the nerve root sheath on the left side that would be possible evidence of an abnormality. After discussing all of the above, the trial judge concluded in his written reasons for judgment that there was no question but that Mrs. Broussard was entitled to damages for the suffering she had to endure as a result of the accident.
In order to reduce a damage award by the lower court, we must find an abuse of discretion on the part of the trial judge in making the award. Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La.1973). Finding no abuse of discretion in the present case, we will not disturb the award made by the trial judge.
The final issue with which we must deal on this appeal involves the limits of the insurance coverage provided by the policies issued to Mr. Kibbe. In his original judgment the trial judge awarded Mrs. Broussard $100,000 for the pain and suffering caused her as a result of the accident. Judgment was also rendered in favor of Mr. Broussard, her husband, for his medical expenses which amounted to $12,732.16. A motion for a new trial was subsequently filed by Travelers in which it was argued that any judgment against the defendants herein must be limited to an amount not exceeding the policy limits applicable, in this case $100,000. Following the granting of a new trial for argument on this point, the trial judge rendered a new judgment in favor of the plaintiffs and against Travelers in the amount of $5,000, together with legal interest thereon from the date of judicial demand and against Interstate in the amount of $95,000, together with legal interest thereon from the date of judicial demand.
The plaintiffs have answered the appeal and asked that the original judgment be reinstated. The plaintiffs argue that the original judgment did not exceed the policy *15 limits herein applicable and argue that the case of Cotten v. Transamerica Insurance Company, 211 So.2d 110 (La.App. 1st Cir. 1968), supports their position in this matter. Our reading of the Cotten case indicates that the ruling by the court in that case has no application to the present factual situation. In that case the plaintiff was awarded damages for personal injuries in the amount of $6,750 and special damages in the amount of $3,383.40, for a total of $10,133.40. The defendant complained that the judgment was in excess of the policy limits, which provided liability coverage for personal injuries in the amount of $10,000. In affirming the judgment of the trial court, the court of appeal concluded that the judgment was not in excess of the policy limits since a portion of the special damages awarded was for property damage. The court pointed out that this amount was covered by the $5,000 policy limitation on property damage coverage. In the present case only the personal injury liability coverage is applicable. The maximum amount allowable under the policies issued by Travelers and Interstate was awarded. A judgment in excess of this amount would not be enforceable in full against these two insurers.
For the reasons assigned, the judgment of the trial court is affirmed at defendants-appellants' cost.
Affirmed.
WATSON, J., concurs in the result.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I cannot agree with my colleagues in their conclusions as to coverage and as to quantum.
The exclusionary clause in question here is contained in Part I of the Travelers policy, relating to bodily injury and property damage liability. It reads:
"This policy does not apply under Part I: . . .
"(e) to bodily injury to any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured; . . ."
In my opinion, the language used in that exclusionary clause is clear and unambiguous. It excludes coverage of bodily injury to an employee of the insured arising out of and in the course of (1) "domestic employment" by the insured, if benefits are payable to the injured employee under the workmen's compensation law, or (2) any "other employment" by the insured (that is, any employment other than domestic), regardless of whether benefits are or are not payable under the workmen's compensation law.
Exclusion (e) makes a distinction between "domestic employment" and "other employment." It excludes coverage to a domestic employee only when that employee is entitled to benefits under the workmen's compensation act. It excludes coverage to all other employees, however, regardless of their rights under the workmen's compensation law. The interpretation given to Exclusion (e) by the trial court and by my colleagues makes no distinction between domestic and other employees. The majority opinion holds that no employee of the insured, domestic or otherwise, is excluded from coverage unless benefits are payable to them under the workmen's compensation law.
Article 1951 of the Louisiana Civil Code, relating to the interpretation of agreements, provides that "When a clause is susceptible of two interpretations, it must be understood in that in which it may have *16 some effect, rather than in a sense which would render it nugatory."
The provisions of Exclusion (e) indicate clearly that a different rule is to be applied in determining coverage of injuries sustained by domestic employees than is applied in determining coverage of injuries sustained by other employees. I do not believe that Exclusion (e) is susceptible of two interpretations, but even if it should be, Article 1951 of the Civil Code requires that it be construed in a way which will give all of its provisions some effect. The majority has failed to do that.
Under my interpretation of this exclusionary clause, it is necessary to determine whether Mrs. Broussard's injuries arose out of and in the course of her employment. Defendants contend that they did. Plaintiffs contend that she completed all of the duties of her employment for that day when her conference with the Internal Revenue Agent was completed, and that she was not acting in the course of her employment when the accident occurred later that afternoon.
An exclusionary clause similar to the one involved here was considered by our Supreme Court in Manuel v. Liberty Mutual Insurance Company, 256 La. 480, 236 So.2d 807 (1970). The court held there that the test to be applied in determining whether the employee's injuries were sustained in the course of his employment, within the terms of the insurance policy's exclusionary clause, is the same test which is applied in determining whether the employee was injured in the course of his employment so as to entitle him to workmen's compensation benefits. In so holding, the court said:
". . . And if plaintiff's actions were of such nature as to be within the course of his employment so as to entitle him to workmen's compensation benefits from his and his co-employee's employer then he should be held to be within the course and scope of his employment within the terms of the insurance policy's exclusion clause. Consequently, resort must be had to the cases dealing with compensation claims to determine whether the plaintiff was in the course of his employment. . ."
In workmen's compensation cases, injuries will be held to have arisen "out of and in the course of" the employment when they result from some risk to which the employee is subjected in performing the duties of his employment and to which he would not have been subjected had he not been so employed. The time, place and circumstances of the occurrence of the injuries determines whether they arose out of and in the course of the employment. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256 (1917); Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973); Constant v. State, 272 So.2d 675 (La.1973); Gardner v. Industrial Indemnity Co., 212 So.2d 452 (La.App. 1 Cir. 1968); Jagneaux v. American Automobile Insurance Co., 136 So.2d 91 (La.App. 3 Cir. 1962); Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3 Cir. 1970).
The above rule applies in determining whether Mrs. Broussard sustained injuries "arising out of and in the course of" her employment, as that term is used in Exclusion (e) of the Travelers policy.
Applying these rules to the facts in this case, it seems clear to me that Mrs. Broussard was in the course of her employment at the time her injuries were sustained. Her claim, therefore, is for bodily injury "arising out of and in the course of. . . other employment by the insured," as those terms are used in Exclusion (e) of Part I of the Travelers policy. I think her injuries clearly are excluded from coverage.
In my opinion the majority has erred in holding that the exclusionary clause is ambiguous and that it does not exclude coverage in this case.
*17 I also feel that the award of general damages made by the trial court is excessive, in that it is out of line with other awards made in similar cases.
For these reasons I respectfully dissent.
NOTES
[1] These reasons were assigned by the trial judge in denying motions for summary judgment filed by the defendants.